297 P.2d 1042

William MEAD, Plaintiff-Appellant,

v.

CITIZEN'S AUTOMOBILE INTER–INSUR-ANCE EXCHANGE, a corporation, Defendant,

Inland Empire Insurance Company, a corporation, Defendant-Respondent.

No. 8433.

Supreme Court of Idaho.

May 29, 1956.

Edward Oksendahl, Coeur d'Alene, for appellant.

Dale Clemons, Robert W. Green, Boise, for respondent.

ANDERSON, Justice.

August 8, 1955, plaintiff and appellant filed a complaint, and made service August 19, 1955, upon defendant and respondent by serving the Idaho commissioner of insurance in accordance with the provisions of I.C. § 41–608. September 20, 1955, appellant took default against defendant and respondent Inland Empire Insurance Company, a corporation, only, as it alone failed to appear. This appeal affects only that company.

October 6, 1955, proof was submitted and findings of fact, conclusions of law, and judgment were entered for plaintiff in the sum of $7,578.50 plus costs.

November 10, 1955, respondent filed a motion to set aside the default and judgment on the grounds of mistake, inadvertence, and excusable neglect under I.C. § 5–905.

An affidavit of T. C. Howay, a vice president of respondent company, discloses that during June and July, 1955, there was internal controversy and a change in two of the officers of the company; that on July 10, 1955, the records and physical plant of the company were moved from Salt Lake City, Utah, to Phoenix, Arizona; that the law firm of Lewis, Roca, Scoville, and Beauchamp of Phoenix, Arizona, was then employed to represent the company and

they employed the law firm of Langroise, Clark, and Sullivan of Boise, Idaho, to handle the company's legal work in this state; that the change of officers and legal counsel caused a great deal of confusion within the company and among its personnel.

This affidavit further discloses that the commissioner of insurance forwarded the summons and complaint to the Boise attorneys, and that on August 24, 1955, they forwarded these papers to the Phoenix law firm, that on the same day two members of the law firm who were on the board of directors resigned and notified the company it might desire to seek legal counsel elsewhere.

August 25, 1955, one of the members of the Phoenix law firm notified the company of the receipt of the summons and complaint, and requested the file be sent to him with the desired action indicated. He also notified the Idaho law firm that he had received the complaint and would advise what future action to take. September 5, 1955, the offices of the company were moved back to Salt Lake City.

Prior to the instigation of the present action, the attorney for appellant had corresponded with the company regarding a claim of Elba U. Davis against the company and Frank W. Mead, the company's insured. The company had no file nor an insured under the name of William Mead, and was unable to properly connect the matter.

The affidavit discloses a meritorious defense, and respondents tendered a demurrer and an answer to plaintiff's claim setting forth a meritorious defense.

Respondents filed the affidavit of B. J. Albertson, chief examiner for the Department of Insurance of the State of Idaho. Among other things, it discloses that he conducted an examination of the company beginning August 15, 1955, at Phoenix, Arizona, and that he knows of his own knowledge that the records, claims, and procedures of the company were thrown into great confusion by being moved to Phoenix, Arizona; that the records were returned to Salt Lake City, Utah, on September 4 and 5, 1955.

September 8, 1955, a preliminary injunction was issued out of the District Court of the Third Judicial District of the State of Idaho, in and for the County of Ada, which injunction enjoined the respondent company, its officers, directors, agents, servants, employees and attorneys, and all other persons, from the transaction of the business of the company and the waste or disposition of its property, except such as may be authorized in writing by the commissioner of insurance of the State of Idaho. October 1, 1955, a judgment and order of rehabilitation was signed by one of the district judges of the Third Judicial District.

October 1, 1955, the commissioner of insurance was appointed to act as the rehabilitator. October 4, 1955, he appointed the affiant as a special deputy commissioner to act in the matter. Albertson's affidavit states that because of the confusion arising

out of the circumstances set forth therein, records of Inland Empire were misplaced due to causes beyond the control of persons responsible for the handling of such records, and employees were unable to make reasonable and prompt decisions in matters of importance because of the absence of a responsible directing head; that the file of William Mead, in the matter therein specified, was involved in such confusion, and that proper action thereon was not taken within the time specified because of such confusion; that the company, and the commissioner of insurance, as rehabilitator, would have taken proper action in this matter except for such confusion.

Upon the appointment of the rehabilitator, he took prompt action in this case, employed the attorneys who proceeded with diligence to secure the necessary information, and moved to set aside the default and the judgment.

A counter-affidavit was filed by the attorney for the appellant, which among other things sets out that he was employed about May 1, 1955, by Frank Mead and appellant for the purpose of bringing this action, that the affiant was informed by the agent for respondent that the automobile involved was registered and the insurance on it was in the name of Frank Mead, due to the minority of William Mead, but that the insurance was intended to cover William Mead. This affidavit set out facts showing correspondence by appellant's attorney with respondent and its then attorneys, Budge and Clemons of Boise, Idaho, prior to the bringing of the action, which informed them of affiant's intention to file an action unless the matter was settled.

December 6, 1955, after a hearing on respondent's motion to vacate and set aside the default and judgment, the trial judge in this case granted the motion and set aside the default and judgment on the ground that the affidavits of respondent set forth facts of excusable neglect under the provisions of I.C. § 5–905. This appeal is from that order.

■ Judgments by default are not favored by the courts, and the general rule inclines toward granting relief from defaults to bring about a judgment on the merits. Orange Transp. Co. v. Taylor, 71 Idaho 275, 230 P.2d 689, 692.

Each case must be decided upon its own facts and circumstances. The Taylor case above mentioned, in discussing this, states:

"What constitutes excusable neglect, or just how a reasonable prudent person should act under similar circumstances are comparative terms and the decisions as to when a default and judgment may be set aside and answer permitted, may appear at times to be somewhat in conflict, and an extensive review of cases covering similar situations would serve no useful purpose. Each case must be examined in the light of the facts presented, and the circumstances surrounding the same."

■ Setting aside a default judgment is within the sound discretion of the trial

court, I.C. § 5–905, and should not be disturbed unless there exists an abuse of discretion.

■ After considering all of the facts and circumstances in this case, and particularly the fact that during part of the time in which respondent could have answered it was enjoined from transacting any business, we are of the opinion that the district court did not abuse its discretion, and we conclude that the order appealed from should be, and is, affirmed.

Costs to respondent.

TAYLOR, C. J., KEETON and SMITH, JJ., and BAKER, D. J., concur.